UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL GEORGEOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:10CV00003 ERW |
| | ) | |
| JAMES BARNES, et al, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment [ECF No. 49], Plaintiff's Motion for Extension of Time and to Compel Defendants to Produce [ECF No. 56], and Plaintiff's Third Motion for Appointment of Counsel [ECF No. 57].

## I.    PROCEDURAL BACKGROUND

Plaintiff Michael Georgeoff ("Plaintiff") brought the pending action under 42 U.S.C. §§ 1981, 1983, 1985, 2000, and the Civil Rights Act of 1871 seeking monetary damages from 28 individual defendants, stemming from events that allegedly occurred while Plaintiff was an inmate at the Northeast Correctional Center in Bowling Green, Missouri.[1]  Plaintiff filed his Complaint [ECF No. 1] on January 19, 2010.  Defendants filed their Motion for Summary Judgment [ECF No. 49] on May 2, 2011.  Plaintiff did not file a Response to Defendants' Motion for Summary Judgment and the time for doing so has expired.

## II.    BACKGROUND FACTS[2]

---

[1]Plaintiff is currently an inmate at the South Central Correctional Center in Licking, Missouri.

[2]The Court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Material Facts contained within the Memorandum in Support of Defendants' Motion for Summary Judgment [ECF No. 52].  The Court also considered the exhibits submitted by the Parties, where appropriate.

The Court begins by noting that, in a motion for summary judgment, the Local Rules require the nonmoving party to "include a statement of material facts as to which the party contends a genuine issue exists," and to provide specific references to the record for those matters contested by the nonmoving party. Local Rule 7-4.01(E). The Local Rules also require the opposing party to "note for all disputed facts the paragraph number from movant's listing of facts." *Id.* Any matters that are not specifically controverted by the nonmoving party are deemed admitted for the purpose of summary judgment. *Id.* Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Nw. Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

In addition, Federal Rule of Civil Procedure 56(e) requires the nonmoving party to respond to a Motion for Summary Judgment, but the party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." This requires the nonmoving party to present "'more than a scintilla of evidence.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 812 (8th Cir. 2008) (quoting *Williams v. City of Carl Junction*, 480 F.3d 871, 873 (8th Cir. 2007)). The district court "'is not obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.'" *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quoting *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1069 (8th Cir. 2005)).

In this case, Plaintiff did not file a Response to Defendants' Motion for Summary Judgment. Plaintiff additionally has submitted neither an affidavit nor other evidence sufficient to create a genuine dispute with respect to Defendants' statement of facts. *See* Local Rule 7-4.01(E) ("All matters set forth in the statement of the movant shall be deemed admitted for

purposes of summary judgment unless specifically controverted by the opposing party."); *see also McIntosh v. Holladay* 2009 WL 2827972, 2 (E.D. Ark., Aug. 31, 2009) ("To defeat a motion for summary judgment, the nonmoving party must go beyond the pleadings and establish 'by affidavits, or by the depositions, answers to interrogatories, and admissions on file' that specific facts show a genuine issue for trial exists" (citing Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  Because Plaintiff failed to specifically controvert any of the facts listed in Defendants' Statement of Uncontroverted Material Facts, the Court will deem admitted each fact contained within Defendants' Statement of Uncontroverted Material Facts for the purpose of the pending Motion for Summary Judgment.

Turning now to the facts of this case relevant to Defendants' Motion for Summary Judgment, Plaintiff's claims arise out of events that occurred while he was an inmate at the Northeast Correctional Center in Bowling Green, Missouri.  Plaintiff claims in his Complaint that he was sexually assaulted by Defendants Barnes, Haynes, and O'Brien as a result of two visual body cavity searches conducted on Plaintiff by these Defendants.  Visual body cavity searches are a part of prison life for Plaintiff, as he has to regularly undergo this type of search every two weeks when his father visits.

The first visual body cavity search, or strip search, at issue in this case was conducted by Defendant Barnes in November 2007.  On this occasion, Defendant Barnes stepped into the cell and instructed Plaintiff and Plaintiff's cellmate, Mark Estrada, to stand up in the back of the cell. Defendant Barnes stood in the doorway with the door partially opened, so that he could be seen outside the doorway and no one could see in.  Defendant Barnes then instructed Plaintiff and Estrada to remove their clothing and shake the articles of clothing out as they removed them. Once Plaintiff and Estrada were completely stripped of their clothes, Defendant Barnes had them

open their mouths, show behind their ears, and raise their arms so he could check their arm pits. Defendant Barnes also checked their fingers and groin, had them turn around so he could check the bottom of their feet, and instructed them to squat and cough. Defendant Barnes did not suspect anything was in their clothing so he did not ask them to hand over their clothing for further search. After finding no contraband on either Plaintiff or Estrada, Defendant Barnes instructed them to put their clothes back on. Defendant Barnes did not conduct the visual body cavity search for his own enjoyment or sexual gratification, did not laugh or smile as a result of the search, and did not perform the search to humiliate either Plaintiff or Estrada. Plaintiff admitted in his deposition that Defendant Barnes did not touch him during the visual body cavity search.

The second search was conducted by Defendants Haynes and O'Brien. Plaintiff described this second visual body cavity search as follows: "One at a time. We took off our clothes. Again, didn't go through any clothes. Didn't have us do the movements, to show anything, the visual inspection of our body. Put our clothes back on." Plaintiff also admitted in his deposition that Defendants Haynes and O'Brien did not touch him during the second visual body cavity search.

Following the first visual body cavity search, Plaintiff filed an Informal Resolution Request against Defendant Barnes, which was accepted by Defendant Epps. During his review of Plaintiff's grievances, Defendant Lawzano noticed that Plaintiff was quoting a policy in his grievance materials that was restricted from offender access. As a result, Defendant Lawzano determined that Plaintiff may be in possession of a copy of an institutional policy that was restricted from his access. Defendant Lawzano then seized Plaintiff's paperwork and brought Plaintiff to his office. Defendant Lawzano and Plaintiff then went through all of Plaintiff's

paperwork page by page. After going through Plaintiff's paperwork, Defendant Lawzano returned all of Plaintiff's paperwork except for two pieces of paper which Plaintiff claimed were missing. Defendant Lawzano instructed Plaintiff to return to his cell and check for the two missing pages. Plaintiff later confirmed he had located the two pages in question.

## III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex*, 477 U.S. at 322. The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at  322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving

party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the nonmoving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the nonmoving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the nonmoving party must show there is sufficient evidence favoring the nonmoving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## IV.      DISCUSSION

Plaintiff has alleged four different violations in his Complaint: I) Civil Rights Violation II) Conspiracy, III) Breach of Fiduciary Duty, and IV) Civil Rights Violation. Plaintiff purports

to bring the pending action under 42 U.S.C. §§ 1981, 1983, 1985, 2000, and the Civil Rights Act of 1871.[3]  Two of these statutes are clearly inapplicable.  A claim under § 1981 involves equal rights under the law  "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981.  A claim under 42 U.S.C. § 2000 typically involves discrimination claims brought under Title VII of the Civil Rights Act of 1964.  At no point does Plaintiff specify the manner in which Defendants allegedly violated these statutes.  The Court finds that Plaintiff has not set forth a factual or legal basis to support any claims under § 1981[4] or § 2000.  As a result, the Court finds that Defendants are entitled to summary judgment on any of Plaintiff's claims filed pursuant to § 1981 and § 2000 because Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants violated these statutes.

## A.      Claim One: Civil Rights Violation

In Plaintiff's first claim, Plaintiff alleges a violation of his rights under the First, Fifth, Eighth, and Fourteenth Amendments.  Although Plaintiff did not elaborate on the specific constitutional violations for this claim beyond stating a "Civil Rights Violation,"[5] the

---

[3]The Civil Rights Act of 1871 was the predecessor of  42 U.S.C. § 1983.  The Court will accordingly consider Plaintiff's Complaint under § 1983.

[4]At no point does Plaintiff contend "because of their racial animus, defendants treated him differently than other prisoners . . . in violation of § 1981."  *Bellecourt v. United States*, 784 F. Supp. 623, 635 (D. Minn. 1992).

[5]The Court gives leeway to its interpretation of Plaintiff's Complaint because "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Paldus*, 127 S.Ct. 2197, 2200 (2007) (per curiam).

characteristics of Plaintiff's constitutional claim fits the mold of a claim arising under 42 U.S.C.

§ 1983. Section 1983 states that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

In the present litigation, Plaintiff asserts that Defendants violated his constitutional rights, and prays for a remedy at law in the form of compensatory damages. Such a claim is precisely the type of action contemplated by § 1983. Thus, this Court will construe Plaintiff's Complaint as to the above listed constitutional violations as a claim pursuant to § 1983.

Before proceeding with its consideration of whether Plaintiff is entitled to recovery for any constitutional violations committed by Defendants, the Court must first address whether Plaintiff has complied with the requirements of the Prison Litigation Reform Act ("PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statute requires the immediate dismissal of any claims brought by an inmate under 42 U.S.C. § 1983, or any other federal law, for which the inmate has not exhausted his or her available administrative remedies. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005). The United States Supreme Court recently held that when an inmate has exhausted his or her administrative remedies as to some, but not all, of his or her claims, the trial court should proceed with the exhausted claims, rather than dismissing the entire action. *Jones v. Bock*, 549 U.S. 199, 219-24 (2007).

The Missouri Department of Correction's ("MDOC's") administrative grievance process

"requires an inmate to file informal resolution requests, grievances, and grievance appeals before the process is exhausted and the inmate can file suit in court." *Cooper v. Minor*, 16 S.W.3d 578, 580 (Mo. 2000) (en banc). In this case, it is apparent from Plaintiff's Complaint that Plaintiff filed an informal resolution request, grievance, and grievance appeal with respect to the first visual body cavity search.[6] It is unclear based on the record in this case whether Plaintiff filed any of those documents for the second visual body cavity search conducted by Defendants Haynes and O'Brien, or whether the grievance materials were supplemented with this information. To the extent that the Court is correct in its observation that Plaintiff's grievance materials pertained only to the search conducted by Defendant Barnes, the Court finds that Plaintiff did not exhaust his administrative remedies with respect to any § 1983 claims regarding the second visual body cavity search, and any such claims are properly dismissed and should not be considered for the purpose of this Motion. However, due to the existence of this ambiguity, and for the sake of argument, the Court will address these claims on the merits.

The Court will now address whether Plaintiff's § 1983 claims are brought against the individual defendants in their individual capacity, official capacity, or both. Defendants argue that the Eleventh Amendment bars Plaintiff's official capacity claims. The Eleventh Amendment

---

[6]MDOC grievance procedures require that an inmate, wishing to grieve any issue regarding the conditions of his confinement, must first file an Informal Resolution Request ("IRR"). IRRs are investigated by a prison staff member, who presents the investigative file, along with a suggested response, to a functional unit manager or assistant superintendent for signature. An offender who is dissatisfied with the response to his IRR must then file an Offender Grievance ("OG"). The OG is investigated by a caseworker, who presents the investigative file, along with the caseworker's suggested response, to the superintendent. The superintendent then issues his response either by signing off on the caseworker's suggested response, or by substituting his own response. Should an inmate wish to contest the superintendent's response to his OG, he must then file an appeal to the MDOC. After the MDOC issues its response to the appeal, an inmate has exhausted his administrative remedies under the MDOC's grievance procedures.

applies to lawsuits against public officials acting in their *official* capacity, but not to lawsuits against public officials acting in their *individual* capacity. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). The Eighth Circuit has established that, "in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998); *Murphy*, 127 F.3d at 754). In this particular case, Plaintiff specifically stated in his Complaint that he was only suing Defendants in their personal capacities (Complaint, ECF. No. 1, pg. 2).[7] Consequently, the Court need not consider the issue of Defendants being sued in their official capacity.

However, to the extent Plaintiff might have intended to sue Defendants in their official capacities, the Court agrees with Defendants that the Eleventh Amendment prohibits recovery by Plaintiff. Claims for monetary damages brought against state officers in their official capacities are barred "either by the Eleventh Amendment or because in these capacities they are not 'persons' for § 1983 purposes." *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989)). In this case, Plaintiff is apparently seeking only monetary relief from the Defendants.[8] Accordingly, the Eleventh

---

[7]"Failure to specify that a plaintiff is seeking relief against the defendant in his or her individual capacity generally results in the dismissal of those claims *without* prejudice." *Darden v. Missouri Dept. of Corrections*, 2009 WL 87776, at *3 (E.D. Mo. Jan. 12, 2009).

[8]While Plaintiff does not appear to be seeking any injunctive relief, any claims for injunctive relief would now be moot because Plaintiff was transferred to the South Central Correctional Center and is no longer an inmate at the Northeast Correctional Center. "[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citing *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978)).

Amendment requires this Court to grant summary judgment for Defendants with respect to Plaintiff's claims for monetary damages against Defendants in their official capacities. The Court will now proceed with its consideration of whether Plaintiff is entitled to recovery for any constitutional violations committed by Defendants in their individual capacities.

###    i.    Violation Under the First Amendment

Defendants argue that Plaintiff cannot sustain his sexual assault claims against Defendants Barnes, Haynes, and O'Brien under the First Amendment. Plaintiff alleges that Defendants Haynes and O'Brien conducted the second visual body cavity search in retaliation for Plaintiff filing a grievance against Defendant Barnes following the first visual body cavity search. "[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). The First Amendment protects Plaintiff's right to file a prison grievance. *See Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). "To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004); *See also Lewis*, 486 F.3d at 1028 ("To succeed on his § 1983 claim, [Plaintiff] must prove that he engaged in protected activity and that [D]efendants, to retaliate for the protected activity, took adverse action against [Plaintiff] that would chill a person of ordinary firmness from engaging in that activity."). However, in this case, Plaintiff has not shown facts that support the second and third elements. There is no evidence that the second search would chill Plaintiff from filing a grievance regarding this search. The uncontroverted facts also fail to show that the second visual body cavity search

conducted on Plaintiff by Defendants Haynes and O'Brien occurred in retaliation for Plaintiff filing a grievance against Defendant Barnes. There is no evidence of a retaliatory motive by Defendants, and Plaintiff is unable to set forth evidence that gives rise to an inference of retaliatory motive. Accordingly, the Court finds that a genuine issue of material fact does not exist, and Defendants are entitled to judgment as a matter of law on Plaintiff's claim of retaliation under § 1983.

### ii. Violation Under the Fourth Amendment

Defendants argue that Plaintiff cannot sustain his sexual assault claim against Defendants Barnes, Haynes, and O'Brien under the Fourth Amendment. The Court agrees. As Defendants argue, "[t]he Fourth Amendment imposes a standard of reasonableness upon the exercise of discretion by government officials, in order to protect the 'privacy and security of individuals against arbitrary invasions.'" This test of reasonableness "requires balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In this case, Plaintiff has failed to show that the Defendants' actions were unreasonable. The uncontroverted facts show that Defendant Barnes stepped into the cell, instructed Plaintiff and Plaintiff's cellmate to remove their clothing, and then completed a visual body cavity search. Defendant Barnes stood in the doorway with the door partially opened, so that he could be seen outside the doorway and no one could see in. In contrast to the allegations in Plaintiff's Complaint, wherein Plaintiff alleges that the search was conducted for the purpose of humiliating Plaintiff for Defendant Barnes amusement, Defendants have produced the sworn affidavit of Defendant Barnes, who states that he did not conduct the visual body cavity search for his own enjoyment or sexual gratification, did not laugh at Plaintiff or smile about the search, and did not perform the search to humiliate Plaintiff. Plaintiff also admitted in his deposition

that Defendant Barnes never touched him.

As a prison inmate, Plaintiff has a "far lower expectation of privacy than do most other individuals in our society." *See Goff v. Nix*, 803 F.2d 358, 365 (8th Cir. 1986). Visual body cavity searches are a part of prison life as demonstrated by Plaintiff having to undergo this type search every two weeks when his father visits. As such, Plaintiff has failed to allege facts linking Defendants Barnes, Haynes, and O'Brien to any alleged unconstitutional acts or that the visual body cavity search was unwarranted or unreasonable. The Court accordingly finds that Plaintiff does not have a valid Fourth Amendment claim against Defendant Barnes.

In regards to the second search, conducted by Defendants Haynes and O'Brien, Plaintiff described the event as follows: "One at a time. We took off our clothes. Again, didn't go through any clothes. Didn't have us do the movements, to show anything, the visual inspection of our body. Put our clothes back on." Plaintiff also stated in deposition that neither Defendant Haynes nor Defendant O'Brien touched him during this second search. The Court finds that Plaintiff's claim against Defendants Haynes and O'Brien must also fail for the same reasons as Plaintiff's claim against Defendant Barnes fails. The uncontroverted facts do not show that there was anything unreasonable about the search or that Defendants violated Plaintiff's Fourth Amendment rights in conducting the search. The Court, therefore, finds that a genuine issue of material fact does not exist, and Defendants are entitled to summary judgment.

### iii.    Violation Under the Fifth Amendment

A violation of the Fifth Amendment, in this case, would require Plaintiff to show that he was deprived of his property or liberty without due process of the law. Beyond bare allegations of sexual assault, Plaintiff has failed to allege any facts supporting his claim on this issue. Plaintiff has not provided facts that sufficiently demonstrate that Plaintiff was deprived of his

property or liberty without due process of the law.  The Court, therefore, finds that a genuine

issue of material fact does not exist, and Defendants are entitled to summary judgment on

Plaintiff's Fifth Amendment claim.

### iv.    Violation Under the Eighth Amendment

Defendants argue that they are entitled to summary judgment as to Plaintiff's § 1983

claim because Plaintiff cannot demonstrate that Defendants subjected him to cruel and unusual

punishment in violation of Plaintiff's Eighth Amendment rights.  "'[T] he treatment a prisoner

receives in prison and the conditions under which he is confined are subject to scrutiny under the

Eighth Amendment.'"  *Lenz v. Wade,* 490 F.3d 991, 995 (8th Cir.2007) (quoting *Farmer v.*

*Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).  In order to establish a

violation of the Eighth Amendment, two requirements must be met: 1) the deprivation, viewed

objectively, must have been sufficiently serious, and 2) the prison official must have acted with

deliberate indifference to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 832

(1994).  As already discussed, the uncontroverted facts fail to show that the searches by

Defendants Barnes, Haynes, and O'Brien were unreasonable.  Plaintiff also has not shown that

Defendants acted with deliberate indifference to his health or safety.  Furthermore, "[b]ecause a §

1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer

some actual injury before he can receive compensation."  *Guerra v. Public Safety Concepts*, 2009

WL 223102, at *3 (E.D. Mo. Jan. 28, 2009); *see also Irving v. Dormire,* 519 F.3d 441, 448 (8th

Cir. 2008) (citing *Carey v. Piphus,* 435 U.S. 247, 253-55(1978)).  Plaintiff has failed to put

forward evidence of any injury.  *See Cummings v. Malone,* 995 F.2d 817, 822-23 (8th Cir.1993)

(stating that claims under the Eighth Amendment require a compensable injury to be greater than

*de minimis*).  In his deposition, Plaintiff admitted that none of the Defendants touched Plaintiff

during these searches. The Court, therefore, finds that a genuine issue of material fact does not exist, and Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

> **v.    Violation Under the Fourteenth Amendment**

To prevail on a claim under the Fourteenth Amendment, a "plaintiff must generally show the defendant acted with deliberate indifference to a constitutional right in a manner that shocks the conscience." *Revels*, 382 F.3d at 875. The Court finds that any claim by Plaintiff arising under the Fourteenth Amendment must fail because, as this Court has already determined, the uncontroverted facts do not show that Defendants "act[ed] with deliberate indifference toward his welfare." *Id.* at 876. The Court, therefore, finds that a genuine issue of material fact does not exist, and Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.

## B.    Claim Two: Conspiracy

Plaintiff's second claim is against all Defendants on a claim of conspiracy. Defendants argue that Plaintiff cannot demonstrate that any Defendant conspired to violate Plaintiff's constitutional rights.

> In order to state a claim for conspiracy under 42 U.S.C. § 1985, Plaintiff must allege: "(1) the defendants conspired, (2) for the purpose of depriving any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws, that (3) one or more of the conspirators did or caused to be done any act in furtherance of the conspiracy, and (4) as a result, another was injured in his person or property or deprived of having and exercising any vital privilege of a citizen."

*Rollen v. Coates*, 2009 WL 2391970, at *2-3 (E.D. Mo. Aug. 3, 2009) (quoting *Criswell v. City of O'Fallon, Mo.*, 2007 WL 1760744, at *5 (E.D. Mo. June 15, 2007)). "A conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (quoting *Kearse v. Moffett*,

311 F.3d 891, 892 (8th Cir. 2002) (per curiam)). "It is well settled that conclusory allegations of a conspiracy are insufficient to state a claim under § 1985(3). There must be some showing of facts to support a conspiracy claim." *Dubray v. Rosebud Housing Auth.*, 565 F. Supp. 462, 466 (D.C. S.D. 1983) (internal citation omitted); *see also Rollen*, 2009 WL 2391970, at *3 (citing *Dubray*).

Plaintiff alleges several acts that he contends were overt acts conducted in furtherance of a conspiracy. In addition to the searches conducted by Defendants Barnes, Haynes, and O'Brien, these acts range from suggesting to Plaintiff that he not pursue his internal grievance (Defendant Lambert); making statements to Plaintiff that Defendant Barnes was not a predator (Defendant Epps); allegedly authorizing "random strip searches" (Defendant Johnson); not stopping Defendant Barnes from conducting the visual body cavity search (Defendants Painter, Scranton); not removing Defendant Barnes from Plaintiff's wing following Plaintiff's internal grievance regarding the first visual body cavity search (Defendants Carter, Painter, Thompson, Lombardi); signing off on a document which Plaintiff believes contained false information[9] (Defendants Carter, Dunn, Godert); writing the IRR response (Defendant Hartigan), not reporting Defendant Barnes to either law enforcement, superiors, or the Department of Corrections central office (Defendants LaBrash,[10] Dunn, Epps, Godert, Hartigan, Kelly, Myers, T. Moore,[11] Prudden, Scranton, Thompson, Clements, Kemma, Lombardi); failure to protect Plaintiff (Defendant

[9]Plaintiff explained in his deposition that he believes the IRR contained false information because it stated that Defendant Barnes had followed policy in conducting the search [Deposition of Michael Georgeoff, ECF No. 52-2, pg. 15].

[10]Plaintiff also alleges Defendant LaBrash was present during the visual body cavity search conducted by Defendant Barnes and did nothing to stop it.

[11]Plaintiff also alleges that Defendant T. Moore knew that Plaintiff's grievance had not been forwarded to DOC's central office.

Crawford), presenting false information to Plaintiff (Defendant Kemma); and searching Plaintiff's cell as instructed by Defendant Lawzano (Defendants Burgett, Elliot). Plaintiff additionally alleges that Defendant J. Moore did not file in the monthly report that Defendant Barnes had committed rape or sexual misconduct against Plaintiff, conduct an investigation into Plaintiff's allegations, or respond to a letter written by Plaintiff. Plaintiff also alleges that Defendant Wilson engaged in acts in furtherance of a conspiracy because Defendant Wilson did not speak to Plaintiff in the course of Defendant Wilson's investigation. Plaintiff alleges that Defendant Lawrence engaged in overt acts in furtherance of a conspiracy because Defendant Lawrence allowed Defendant Lawzano to search Plaintiff's paperwork for a contraband policy which Defendant Lawzano believed was in Plaintiff's possession.

Upon review of the record in this case, the Court finds that the uncontroverted facts fail to show that Defendants, as a result of any alleged conspiracy, engaged in conduct that deprived Plaintiff of a constitutionally protected federal right. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Ballard v. Heineman*, 548 F.3d 1132, 1135 (8th Cir. 2005) (quoting *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2008). The uncontroverted facts fail to show a 'meeting of the minds' among the alleged conspirators, and Plaintiff does not "allege sufficient facts that shows defendants reached an agreement and directed themselves toward an unconstitutional action by virtue of a mutual understanding." *Bellecourt v. United States*, 784 F. Supp. 623, 635 (D. Minn. 1992) (citing *City of Omaha Employees Betterment Assoc. v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989). Plaintiff's claim is entirely supported by statements containing conclusory allegations, without the required specificity and the necessary factual assertions needed to sustain such a claim.

The facts do not establish that Defendants: 1) deprived Plaintiff of his right to freedom of religion, speech, or assembly (First Amendment); 2) subjected him to an unreasonable search or seizure (Fourth Amendment); 3) deprived him of his property or liberty without due process of the law (Fifth Amendment); 4) subjected him to cruel and unusual punishment (Eighth Amendment); or 5) otherwise deprived him of due process or equal protection of the law (Fourteenth Amendment). Because there was no constitutional violation, the Court need not reach the issue of whether the Defendant officers are entitled to qualified immunity.[12] The Court accordingly finds that Plaintiff has failed to show that there is a genuine issue as to any material fact on this claim, and Defendants are therefore entitled to judgment as a matter of law because the uncontroverted facts refute Plaintiff's factual allegations.

## C.     Claim Three: Breach of Fiduciary Duty

Plaintiff's third claim is against all Defendants for breach of fiduciary duty. In this claim, Plaintiff alleges that once Defendants gained knowledge of "a conspiracy to violate Plaintiff's rights and were further informed by the Plaintiff" of his sexual assault allegations, the Defendants either failed to investigate the sexual assaults/rapes, report the sexual assaults/rapes to state and federal law enforcement as mandated by law and PREA, and took no substantial steps to protect Plaintiff or eviscerate this state created danger."

Turning first to Plaintiff's failure to protect claim, the United States Supreme Court has

---

[12]Qualified immunity protects "[g]overnment officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to assess whether a government actor is entitled to qualified immunity, courts apply a two-part test on summary judgment, asking (1) whether the plaintiff has shown a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the alleged constitutional deprivation. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16, 818 (2009).

established that "prison officials . . . must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). As already noted, in order to establish a violation of the Eighth Amendment in this case, two requirements must be met: 1) the deprivation, viewed objectively, must have been sufficiently serious, and 2) the prison official must have acted with deliberate indifference to the inmate's health or safety. *Id.* With respect to the first element, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* As to the second element, a prison official cannot be held liable for failing to protect an inmate unless "the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

In this case, Plaintiff's claim involves sexual assault allegations arising out of the visual body cavity searches conducted on Plaintiff. As with the Court's determination that there is no genuine issue of material fact regarding Plaintiff's first and second claims, the Court finds that Plaintiff's conclusory allegations are insufficient to preclude summary judgment on his breach of fiduciary duty claim. There is no support in the record for Plaintiff's allegations that Defendants failed to protect him. Plaintiff has failed to establish the two elements of a failure to protect claim. First, there is no evidence that there was a substantial risk of serious harm to Plaintiff. The uncontroverted facts show that Plaintiff was never touched during the search. Second, there is no evidence that any prison official acted with deliberate indifference to the Plaintiff's health or safety. Plaintiff stated in his deposition that this type of search is part of prison life because he regularly has to undergo this type of search every two weeks when his father visits. Furthermore, there is no support for Plaintiff's allegations that Defendants abused their state powers, violated clearly established duties or conducted any actions "with a malicious intent to injure Plaintiff, in conscious disregard for his health, welfare and constitutional rights."

As Plaintiff has failed to "make a showing sufficient to establish the existence of an element essential to [his] case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. Accordingly, the Court finds that Plaintiff's breach of fiduciary duty claim against the Defendants must fail. Because there was no constitutional violation, the Court need not reach the issue of whether the Defendant officers are entitled to qualified immunity. The Court finds that no genuine issue of material fact exists regarding this claim, Defendants are entitled to judgment as a matter of law on this claim.

**D.      Claim Four: Civil Rights Violation**

Plaintiff's fourth claim involves an alleged civil rights violation against Defendants Lawzano, Dunn, Lawrence, Elliot, and Burgett, arising out of a search and confiscation of papers and materials from Plaintiff's cell. Plaintiff argues that these Defendants "should have known that when they seized Plaintiff's legal work, work product, notes pertaining to the present case, without Plaintiff's permission or even in the presence of the Plaintiff, and kept the items for several days, copying and reading them, then returning only a portion of the seized documents, that their actions . . . violated Plaintiff's Civil Rights under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution."

 Plaintiff doesn't allege a violation under the Fourth Amendment, which prohibits unreasonable searches and seizures. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "'A seizure of property occurs when there is some meaningful interference with a person's *possessory* interests in that property.'" *Id.* (quoting *Lesher v. Reed*, 12 F.3d 148, 150 (8th Cir. 1994)). Such a seizure is unconstitutional if it is unreasonable, and reasonableness is "judged from the

perspective of a reasonable officer; it does not turn on the subjective intent of the officer." *Id*

"'When the state claims a right to make a warrantless seizure, [the court] must balance 'the

nature and quality of the intrusion on the individual's Fourth Amendment interest against the

importance of the governmental interests alleged to justify the intrusion.'" *Id.* (quoting *Altman v.*

*City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003)).

In this case, Defendants did not violate Plaintiff's constitutional rights. After reviewing

Plaintiff's grievance materials, Defendant Lawzano noticed that Plaintiff was quoting a policy

that was restricted from offender access. The paperwork in Plaintiff's cell was subsequently

confiscated, and Defendant Lawzano and Plaintiff then went through all of Plaintiff's paperwork

page by page. After going through Plaintiff's paperwork, Defendant Lawzano then returned all

of Plaintiff's paperwork except for two pieces which Plaintiff later confirmed were in his cell.

While there was an interference with Plaintiff's possessory interest in the materials that

were removed, the nature and quality of the intrusion was justified. The search of Plaintiff's cell

and seizure of paperwork, whether by, or at the order of Defendant Lawzano, was conducted due

to a reasonable suspicion that Plaintiff was in possession of materials to which his access was

prohibited. Any disruption in Plaintiff's possessory interests in the seized materials occurred as a

direct result of the need to investigate whether Plaintiff was in possession of contraband

materials. As such, the Court finds that there was not a violation of Plaintiff's Fourth

Amendment Rights. Furthermore, the Court need not reach the issue of whether the Defendant

officers are entitled to qualified immunity because there was also no constitutional violation

under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. The

Court concludes that Defendants are entitled to summary judgment on Plaintiff's civil rights

violation claim because the uncontroverted facts demonstrate that Plaintiff has failed to set out

specific facts showing a genuine issue for trial.

V.      CONCLUSION

Plaintiff has failed to establish that a genuine issue of material fact exists with respect to each of his four claims.  There is no factual support that 1) Plaintiff was sexually assaulted by Defendants Barnes, Haynes, and O'Brien, 2) that Defendants conspired against him in order to deprive of his constitutional rights, 3) Defendants breached a fiduciary duty, or 4) violated his civil rights by seizing paperwork from Plaintiff's cell.  As such, Defendants' Motion for Summary Judgment is granted in all respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [ECF No. 49] is **GRANTED**.  Plaintiff's claims against Defendants are **DISMISSED**, **WITH PREJUDICE**.

**IT IS HEREBY FURTHER ORDERED** Plaintiff's Motion for Extension of Time and to Compel Defendants to Produce [ECF No. 56] and Plaintiff's Third Motion for Appointment of Counsel [ECF No. 57] are **DENIED, as moot**.

Dated this <u>23rd</u> day of <u>August</u>, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE